State of Wisconsin, Plaintiff-Respondent,
v.
Robert T. Barnard, Defendant-Appellant.
No. 04-0968-CR.
Court of Appeals of Wisconsin.
Opinion Filed: August 10, 2004.
¶1 CANE, C.J.[1]
Robert Barnard appeals an order denying his motion to suppress evidence and a judgment convicting him of operating a motor vehicle while intoxicated, fourth offense. Barnard argues the trial court erred by denying his motion to suppress because he claims he was subjected to an unlawful stop. We affirm the order and judgment.

BACKGROUND
¶2 On October 27, 2002, around 2:25 a.m., Officer Tom Meilinger was on patrol in a marked squad car in Kimberly. While he drove west on Kimberly Avenue, Meilinger observed a vehicle approaching him. The vehicle, which was not being driven erratically or otherwise unlawfully, turned south onto Joseph Street. Meilinger turned south on an adjacent street. The other vehicle then turned west onto Kuborn Avenue, and Meilinger turned in the same direction. After that, the driver parked the vehicle and shut off the lights. Upon observing this, Meilinger drove past the vehicle. As he drove by, Meilinger saw the driver, later identified as Barnard, duck from his view.
¶3 Meilinger continued down Kuborn and went around the block. There, he waited a few moments and listened for any activity or sounds that were out of the ordinary. After not hearing any activity, Meilinger drove back to Kuborn and again drove past the parked vehicle, this time in the opposite direction. As he drove by, Meilinger saw Barnard duck from his view for a second time. Meilinger turned around, parked behind the vehicle, activated his emergency lights, and requested assistance. During this time, Barnard remained hidden from Meilinger's view.
¶4 When backup arrived, Meilinger illuminated the vehicle with a spotlight and used a PA system to identify himself and ordered the driver to sit up. After receiving no response and seeing no movement in the vehicle, Meilinger and a backup officer approached the vehicle. When Meilinger reached the passenger side, he saw Barnard kneeling on the front passenger floor and laying motionless on the seat. Barnard's face and hands were concealed.
¶5 Meilinger attempted to get Barnard's attention but could not do so. Meilinger then kicked the passenger doorframe, which caused Barnard to finally look up. Meilinger ordered Barnard to show his hands and exit the vehicle. Barnard eventually complied, and Meilinger escorted Barnard to the rear of the vehicle to find out what Barnard was doing. From that conversation, Meilinger suspected Barnard was intoxicated. After Barnard failed field sobriety tests, Meilinger arrested him for operating while intoxicated.
¶6 Barnard moved to suppress any evidence of intoxication, arguing that he was stopped without reasonable suspicion. The trial court concluded the officer acted reasonably pursuant to the community caretaker police function. Barnard later pled guilty to operating while intoxicated, fourth offense, and now appeals.

DISCUSSION
¶7 Barnard argues he was seized when Meilinger activated his emergency lights, because WIS. STAT. § 346.04(3) prohibits leaving the scene after receiving such a signal, and that the seizure was an unlawful stop because it was not predicated on reasonable suspicion. Further, Barnard claims the seizure cannot be justified on a community caretaker function, as Meilinger admitted he was not concerned about Barnard's safety when he activated the squad's emergency lights. Although the State nonetheless argues the seizure was lawful under the community caretaker function, we conclude there was reasonable suspicion to stop Barnard.[2]
¶8 The review of an order granting or denying a motion to suppress evidence presents a question of constitutional fact. State v. Hughes, 2000 WI 24, ¶15, 233 Wis. 2d 280, 607 N.W.2d 621. The trial court's factual findings will be upheld unless they are clearly erroneous but we independently apply the law to those facts. Id.
¶9 The Fourth Amendment permits a police officer to stop a person for purposes of investigating possible criminal behavior. See Terry v. Ohio, 392 U.S. 1, 22 (1968). A legal stop requires that a police officer reasonably suspect that some kind of criminal activity has taken or is taking place. State v. Richardson, 156 Wis. 2d 128, 139, 456 N.W.2d 830 (1990). The reasonable suspicion must be based on specific and articulable facts, which, along with valid inferences from those facts, reasonably warrant the police intrusion. State v. Williams, 2002 WI App 306, ¶12, 258 Wis. 2d 395, 655 N.W.2d 462. "The question of what constitutes reasonable suspicion is a common sense test: under all the facts and circumstances present, what would a reasonable police officer reasonably suspect in light of his or her training and experience." State v. Young, 212 Wis. 2d 417, 424, 569 N.W.2d 84 (Ct. App. 1997).
¶10 Assuming Barnard was seized at the time Meilinger activated his emergency lights, there was reasonable suspicion for the stop. First, all the events occurred during the very early morning hours. "The hour of the day may ... be relevant in that the individual's activities may or may not be consistent with the typical behavior of law-abiding citizens at that time." State v. Kyles, 2004 WI 15, ¶58, 269 Wis. 2d 1, 675 N.W.2d 449. Second, in considering Barnard's behavior, he ducked out of the officer's view not once, but twice. In Illinois v. Wardlow, 528 U.S. 119, 124 (2000), the United States Supreme Court held that evasive behavior is also a factor to be considered when determining whether there was reasonable suspicion. See id. (flight plus being located in a high-crime area constituted reasonable suspicion); but see State v. Anderson, 155 Wis. 2d 77, 88, 454 N.W.2d 763 (1990) (flight from a police officer alone constitutes reasonable suspicion). Third, Barnard's ducking could reasonably be considered a "furtive gesture." Such movements are also a factor to be considered when deciding whether there was reasonable suspicion. See State v. Goebel, 103 Wis. 2d 203, 210 n.3, 307 N.W.2d 915 (1981). Surely, Barnard may have been leaning over in the car for innocent reasons. However, our inquiry centers on a reasonable officer who does not have to rule out innocent explanations. See State v. Waldner, 206 Wis. 2d 51, 60, 556 N.W.2d 681 (1996). It is reasonable to conclude that Barnard was leaning over to hide or remove contraband from somewhere within his reach. Thus, based on these facts, a reasonable police officer would reasonably suspect criminal activity was afoot.
By the Court.  Judgment and order affirmed.
NOTES
[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2). All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] To whatever extent Barnard argues there was not reasonable suspicion because Meilinger also testified that he had no specific reasons to believe that any crime was occurring, the argument is unavailing because the inquiry of whether reasonable suspicion existed is measured by an objective standard. See State v. Waldner, 206 Wis. 2d 51, 56, 556 N.W.2d 681 (1996).